UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Luis Castro,<br><br>    Plaintiff,<br><br>v.<br><br>Guadarrama et al.,<br><br>    Defendants. | Civil No. 3:25-cv-00809 (VAB) |

**RULING ON PLAINTIFF'S
MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

**I. Introduction**

Luis Castro ("Plaintiff") is an inmate currently incarcerated at Cheshire Correctional Institution in Cheshire, CT. On May 21, 2025, he filed a Complaint alleging that his civil rights had been violated. (Compl., ECF No. 1.) He also sought leave to proceed *in forma pauperis*, or "IFP" — in other words, he wanted to commence his lawsuit without prepaying the filing and administrative fees. (ECF No. 2; *see also* ECF No. 10.)

Because Mr. Castro disclosed over $5,000 in recent income, and because he failed to comply with the Court's directive that he explain where the money came from and what it was used for, his motion for leave to proceed *in forma pauperis* is **DENIED**.

**II. STANDARD OF REVIEW**

Ordinarily, a plaintiff must pay $405 to commence a civil action. *See* 28 U.S.C.A. § 1914. a person who can demonstrate, however, an inability "to pay" may file for leave to proceed IFP. 28 U.S.C.A. § 1915(a)(1). If a plaintiff seeking IFP status is a prisoner, the plaintiff must follow additional procedural requirements, including providing a certified copy of his inmate trust account

for the six months before the filing. 28 U.S.C.A. § 1915(a)(2). To demonstrate inability to pay, a person does not need to be absolutely destitute, but the person must show that paying the fee would interfere with the ability to provide for oneself and any dependents with the "necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Courts often grant leave to proceed IFP when an inmate's account balance is lower than the amount needed to cover the filing fee. *See, e.g.*, *Goodley v. Martin*, No. 3:24-cv-00948 (SRU), 2024 WL 3279035, at *2 (D. Conn. June 11, 2024) (granting IFP motion where "at no point . . . has [the plaintiff's] trust account balance exceeded $210.05."). The inquiry does not, however, end there. It is also necessary to consider whether an inmate's low account balance is a product of the person's own voluntary spending habits, and whether the person otherwise could have afforded the fee. *See, e.g.*, *Crispin v. Anderson*, No. 3:21-cv-945 (KAD), 2021 WL 3206850, at *2 (D. Conn. July 19, 2021) ("[Plaintiff] had sufficient funds to pay the filing fee in this case but chose to spend those funds on other things to render himself eligible for *in forma pauperis* status. This is not the proper use of the *in forma pauperis* statute."); *Hinton v. Pearson*, No. 3:21-cv-863 (MPS), 2021 WL 3036921, at *2 (D. Conn. July 19, 2021) (citation and internal quotation marks omitted) ("[W]hen considering a prisoner's affidavit of indigence, the district court may inquire whether, if a prisoner has no cash credit at the moment of filing, he had disabled himself by a recent drawing on his account and if so, for what purposes.").

When looking at spending habits, the relevant inquiry is from the date of the events giving rise to the lawsuit, because before then, the plaintiff could not realistically have been contemplating litigation. *See id.* (stating that plaintiff was "contemplating litigation" from time events in complaint occurred to time of filing, but nevertheless "chose to deplete his funds"); *see also Clark v. Pappoosha*, No. 3:21-cv-1690 (CSH), 2022 WL 960296, at *1 (D. Conn. Mar. 30, 2022)

("[Plaintiff] was aware of the facts underlying the claims he seeks to advance in this action; but instead of using his resources to file his claim, he first chose to make numerous purchases . . .").

Courts also look at the totality of the resources available to a person, including financial support from others. "In assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend." *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002). Thus, "[w]here a litigant is supported or assisted by another person, the [c]ourt may consider that person's ability to pay the filing fee." *Chambers v. Connecticut*, No. 3:24-cv-01454 (KAD), 2025 WL 1332989, at *2 (D. Conn. May 7, 2025) (quoting *Pierre v. City of Rochester*, No. 16-cv-6428 (CJS), 2018 WL 10072449 (W.D.N.Y. Dec. 13, 2018)), *report and recommendation adopted*, slip op. (D. Conn. July 2, 2025).

### III. DISCUSSION

Mr. Castro's May 21, 2025, IFP motion (ECF No. 2) raised two issues.

First, he did not have a prison official certify the trust account statement, as required by 28 U.S.C.A. § 1915(a)(2). (ECF No. 2, at 5.) Second, he disclosed over $5,000 in recent income, composed principally of "family & friends gifts." This Court therefore issued a notice of insufficiency on May 29, 2025, asking him to obtain the certification and to clarify the nature of the gifts he had received. (ECF No. 9.) In response, Mr. Castro filed a new IFP motion on June 4, 2025, but he only fixed one of the outstanding issues. (ECF No. 10.) The new IFP motion has the necessary certification on page five, but is otherwise identical to the previously filed form. (*Compare* ECF No. 10, *with* ECF No. 2.) Notably, Mr. Castro did not attempt to explain the $5,000, despite being directed to do so by the Court. Thus, while his trust account statement shows a

balance of only $265.74, (ECF No. 3), there is reason to believe that he has access to sufficient funds to pay the filing and administrative fees.

Put simply, Mr. Castro reported over $5,000 in recent income, and he has not explained why he could not also pay his filing fees. As noted above, the relevant inquiry is whether he "can get" the money from the people who supply him with the "necessities of life." *Fridman*, 195 F. Supp. 2d at 537. The Court gave Mr. Castro an opportunity to explain the sources of his income (ECF No. 9), but he declined to do so.

Notably, Mr. Castro's income appears only on his application form, not on his trust account statement, and has therefore considered the possibility that Mr. Castro mistakenly overstated the amount of money he actually received. But, because Mr. Castro twice stated under penalty of perjury that he had over $5,000 in recent income, (ECF Nos. 2, 10), the Court has to conclude that he did, indeed, receive this income. And, in considering whether an inmate is entitled to proceed IFP, courts consider all his assets, not just those in his inmate account. *See, e.g.*, *Waters v. King*, No. 11-cv-3267 (JMF), 2012 WL 1889144, at *3 (S.D.N.Y. May 24, 2012) (dismissing complaint by inmate plaintiff who had settlement check deposited into credit union account instead of inmate trust account). Mr. Castro's self-reported deposits and spending, (ECF No. 2, at 3, 5), do not align with his provided statements, (ECF No. 3), further suggesting access to financial resources outside of the inmate trust account.

Accordingly, the plaintiff's two motions for leave to proceed *in forma pauperis* (ECF Nos. 2, 10) will be denied.

IV. Conclusion

For these reasons, Mr. Castro does not qualify for *in forma pauperis* status, and his motions for leave to proceed *in forma pauperis* (ECF Nos. 2, 10) are **DENIED**.

All further proceedings in this matter shall be held in abeyance until **September 26, 2025**, pending Mr. Castro's delivery of the filing fee in the amount of $405 (money order or bank check made payable to the Clerk of Court) to the Clerk's Office, 141 Church Street, New Haven, CT 06510.

Failure to tender the filing fee on or before **September 26, 2025**, may result in the dismissal of this action without further warning.

**SO ORDERED** at New Haven, Connecticut, this 22nd day of August, 2025.

                                              /s/ Victor A. Bolden
                                              Victor A. Bolden
                                              United States District Judge